Fegley *v.* Morthimer, Appellant.

Argued March 18, 1964. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*John P. Lavelle,* with him *George A. Shutack, Marianne S. Lavelle,* and *Shutack, Lavelle & Lavelle,* for appellant.

*Laurence H. Eldredge,* with him *Russell P. Chaplinsky,* for appellee.

OPINION BY FLOOD, J., June 30, 1964:

This is an appeal from the refusal of the court below to enter judgment for the defendant in a libel action, notwithstanding a jury verdict for the plaintiff.

The appellee moved to quash the appeal because the court below did not formally act upon the defendant's motion for judgment n.o.v. But in its opinion the court "dismissed" both of the defendant's reasons for judgment n.o.v., although it did not enter a formal order dismissing the motion, as it should have. In addition, it granted a new trial as to both the appellee and his co-plaintiff, thus in effect dismissing the motion for judgment n.o.v. The motion to quash is dismissed.

The appellant bases his argument for judgment n.o.v. upon the ground that the allegedly libelous statements were not capable of a defamatory meaning, the writing is not libelous per se and special damages were neither alleged nor proved.

We agree with the lower court that the newspaper article quoted in part below[1] is capable of a defama-

---

[1] "A bosom pal of Reich is Dr. Homer B. Fegley who just happens to be on the Union School District Board and Chairman

tory meaning. Without benefit of innuendo, it can be read as accusing the appellee of conspiring with Councilman Reich to purchase Reich's property at an exorbitant price in breach of his fiduciary duty as a member of the school board and chairman of its planning committee. This imputation, if made with malice, constitutes libel per se and is actionable without proof of special damages.

Section 573 of the Restatement, Torts, states that "one who falsely and without a privilege to do so, publishes a slander which ascribes to another conduct . . . incompatible with the proper conduct of his . . . public office whether honorary or for profit, is liable to the other." Section 570 provides that one who makes such publication is "liable to the other although no special harm or loss of reputation results. . . ." See *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A. 2d 751 (1962). The publication in this case clearly imputes to the appellee conduct which is incompatible with the duties of his public office. It is, therefore, actionable under the rule laid down in Section 573 of the Restatement and, under Section 570, actionable without proof of special harm or loss of reputation. In *Cosgrove Studio and Camera Shop, Inc. v. Pane*, supra, Justice EAGEN states: "any language

---

of the two million dollar high school planning committee. Fegley, to boot, is President of the Chamber of Commerce and likewise a power in that dormant WIN, which, if we can believe reports, should have thousands of dollars tucked away someplace while Lehighton is starving for action to bring us industry and jobs. Well, you are about to build this school and the Fegley Committee beats down all opposition and decides to jam it in a patch of school district owned land up along Beaver Run Road. But on the edge of the desired site is a once abandoned farm house owned by none other than Councilman George Reich. In a mighty quick deal, the School Board, with Fegley's Committee pushing, bought the place for something like $17,500. That's a mightly fine price considering that just a few doors from where I live on South Third Street is one of the best houses in Lehighton, offered at $20,000."

which unequivocally, maliciously and falsely imputes to an individual or corporation want of integrity in the conduct of his or its business is actionable." The court cites Sections 570 and 573 of the Restatement of Torts. Since these sections establish the same criterion for liability based upon false statements regarding a public officer, it follows that language falsely and maliciously imputing want of integrity in the conduct of a public office is actionable. The order of the court below must be affirmed.

The plaintiff-appellee asks us to go further and direct the trial judge at the new trial to charge that the publication was clearly defamatory and libelous per se and that conditional privilege is not a defense. In view of the decision of the Supreme Court of the United States in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), we cannot direct such a charge. It was there held that the guarantee of free speech in the First Amendment to the Constitution of the United States, applicable under the Fourteenth to action by the states, precludes recovery for the publication of a false statement in a newspaper with regard to a public officer unless the plaintiff proves that it was made with actual malice, as there defined and discussed. In view of this burden, a verdict for the plaintiff could not be directed in this case.

Order affirmed.

---

DISSENTING OPINION BY WOODSIDE, J.:

A free democratic society cannot endure unless it rests firmly upon the right of the governed to criticize their officials. This right is no less valid because the criticism is sometimes caustic and undeserved. All officials long in public service have suffered from abusive language by critical constituents, but the feelings of officials is an insignificant consideration beside the need of a clear right to criticize them without undue

58

restrictions. When a person seeks and holds public office, he must be willing to endure criticism of his official acts beyond that which a private citizen is called upon to bear for his acts.

Of course, the right of the press to attack public officials is not without limits. Circulating false and grossly unfair reports concerning official conduct misleads the public and undermines their confidence in the press as well as in their officials. The courts must draw a line which enables the press to critically examine the acts of public officials without fear of reprisal, but which does not allow the public to be misled and the officials unduly abused by false and scurrilous reports.

I dissent in this case because I think the line drawn by the majority requires the defendants to account too strictly for their criticism of a real estate transaction in which the appellee was involved as a public official. Although the attack on the school director was severe and the stated details inaccurate,[1] the basic facts reported were substantially true. I think we should hold as a matter of law that the printed article was not defamatory.

I would enter judgment for the defendants n.o.v.

---

[1] The price paid for the premises was inaccurately stated in the article, and it was the councilman's wife and not he who had an interest in the premises.